## Wheeler-Holder Co. v. Reynolds.

(Decided September 22, 1910.)

### Appeal from Whitley Circuit Court.

Timber Contract—Sawing Timber and Crossties—Value of Services—
Agreement to Pay.—In an action by appellee for breach of con-
tract for sawing timber and crossties on appellant's land, when
the sawing was completed appellee and an agent of appellant
agreed on $500.74 as the sum due appellee, which appellant then
agreed to pay, but subsequently refused to pay. On the trial
the jury awarded appellee said sum of $500.74. Held, the find-
ing of the jury be affirmed.

K. D. PERKINS for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

It appears that appellant owned the timber on a
tract of land in Whitley county, Kentucky, known as the
"King Mountain" tract. It employed appellee to manu-
facture this timber into railroad crossties and lumber
at the price of $3.00 per thousand feet. Appellee agreed
to saw as many as 100,000 feet a month, and to make
good, merchantable lumber and crossties. The ties were
to be eight inches wide and six inches thick. Appellant
agreed to furnish the timber at or on the skids at the
mill; to receive the ties and lumber at the mill and carry
it to the railroad station, and to pay appellee 90 per
cent. of the contract price on Saturday after the 15th
of each month, 10 per cent. being retained by appellant
until the contract was completed, at which time it was
to be paid to appellee, provided he had performed the
work as stipulated in the contract. If he failed, how-
ever, to do the work according to the contract, he was
to forfeit the 10 per cent. to appellant, "not as a penalty,
but as liquidated damages." The contract also provided
that the sawing was to be done at two sites which were
to be selected by appellant.

Appellant paid the 90 per cent. on the sawing as
stipulated, except for a part of the last month's sawing.
When the sawing was completed, appellee and an agent
of appellant, in its office in Williamsburg, Kentucky,
agreed, according to appellee and his witnesses, in a

settlement as to the amount due appellee under the contract, $500.74, which was made up of two items, one for a part of the last month's sawing at $3.00 per thousand feet, and the other was the 10 per cent. which appellant had retained on the previous monthly settlements. Appellee's contention, in which he is sustained by at least five witnesses, is that appellant's agent agreed to and would have paid him the sum stated at that time but for the fact that he had no blank checks of appellant's to counter-sign; that he had used the last check to pay the person who hauled the logs to the mill, a few minutes before the settlement with appellee; that the agent of appellant told appellee he would receive the blank checks by the next Monday and for him to return on that day and he would pay him. Appellant's agent and two or three other employes, testified that the books of the parties agreed as to the amount due appellee, provided he had performed his part of the contract as he had agreed, and also agreed that the agent had no blank check to issue and deliver to appellee at that time, but denied that he promised to pay him on the following Monday. They stated that the agent told appellee he would not be paid until Perkins, another agent of the company, returned to the city. Appellee returned to Williamsburg on Monday and found the agent with whom he had made the settlement, and Mr. Perkins, but they refused to pay him for the alleged reason that he had failed to perform the contract, in that he cut many of the ties under the size stipulated and much of the lumber too thin to be merchantable. Appellee then instituted this action.

By the first paragraph of the petition appellee sought to recover $233.00 and some cents, the contract price for the lumber sawed the last month. By the second paragraph he asked to recover $267.00 and a few cents, the amount which had been retained on the monthly settlements. By the third paragraph he wanted to recover $100.00, expenses incurred in making two sets of his mill more than the contract required him to make. In the fourth paragraph he set up a claim for $1,500.00 damages caused by the failure of appellant to furnish timber sufficient to make the 100,000 feet of lumber and ties per month, which it was required to do by the contract, which he could have easily sawed, and by reason of this failure he was compelled to shut down his mill

and he and his employes to go without employment during the time. Appellant answered denying its responsibility for the sums claimed in each of the four paragraphs, and presented a counter-claim for $1,300.00 in damages occasioned by appellee's failure to saw the ties and lumber as provided in the contract. It alleged that appellee sawed many of the ties too thin and that it had to dispose of them as second-class ties, which were worth only one-half as much as a first-class tie, and that he cut much of the lumber too thin and it was not merchantable. The testimony upon the last question was very conflicting, but it shows there was no serious complaint as to the manner in which the ties and lumber were being manufactured until after the contract was near completion and nearly all the material had been removed. The testimony shows that appellee made two sets of his mill more than the contract required him to make, and that the expense, if paid for, was about as charged in the petition. But it is pretty clearly indicated by the testimony that appellee and the persons hauling the logs to the mill, agreed that these extra sets should be made for the benefit of the loggers and was done without any request or demand on the part of appellant. Appellee introduced testimony tending to show that he had been damaged by reason of the failure of appellant to furnish timber sufficient for him to saw 100,000 feet of lumber and ties per month; that if appellant had complied with this provision of the contract, he could have completed it in nine months, whereas, on account of such failure, he remained there fifteen months to complete the contract.

It is evident that the jury arrived at the conclusion that these claims of the parties for damages were afterthoughts and that if the agent of appellant had been supplied with a blank check on the day of the settlement referred to, he would have issued, counter-signed and delivered it to appellee in settlement of all matters between them. This is made certain by the fact that the jury's verdict in behalf of appellee, was for the precise amount agreed on for the last month's sawing and the retained 10 per cent., and we are of the opinion that the jury had ample evidence upon which to base such a finding.

In its instructions with reference to appellant's counter-claim, the court told the jury, in effect, that if

it found from the evidence that appellee in sawing the ties and lumber did not, substantially, comply with the contract and thereby damaged appellant, they should find for it a sum in damages not exceeding the 10 per cent. stipulated in the contract. Appellant's counsel contends that this was error; that the court should have confined the jury to the sum stated in the pleadings, to-wit: $1,300.00; that the court misconstrued the contract when it determined that the 10 per cent. retained under the contract was a bar to recovery for a greater sum. It is not necessary for us to pass upon this question, as the jury, by its verdict, determined that appellant was not entitled to any damages. While it is true that the court limited the jury in its finding, if any, in damages for appellant, to 10 per cent. of the contract price, we cannot see how it would have been of any benefit to appellant to have had the amount limited to $1,300.00, the amount of its counter-claim, as the jury found nothing at all for appellant. Therefore, if the court erred in that instruction, it was not prejudicial to appellant.

For these reasons, the judgment of the lower court is affirmed.